Subject:  Seven Arts

From:    Peter Hoffman

To:      michaelarata        ; JDaigle        ;

Cc:      PHOFFMAN        ;

Date:    Tuesday, January 4, 2011 6:40 PM

Please see the attached long form Loan and Security Agreement as discussed.



Peter Hoffman
Seven Arts Pictures
1801 Century Park East, Suite 1830
Los Angeles, CA 90067
Direct Tel: 323-372-3080

GOVERNMENT
EXHIBIT
T

## LOAN AND SECURITY AGREEMENT

### (BOOTY PATROL)

This Loan and Security Agreement (the "Agreement") is made and entered into as of November 8, 2010 by and between NEW MOON PICTURES LLC ("Borrower"), a Louisiana limited liability company, 900 Royal Street, 3rd Floor, New Orleans, Louisiana 70116, Attention: Mr. Peter Hoffman, and the VOODOO MOTION PICTURES DISTRIBUTION COMPANY, LLC ("Voodoo") and TCA GLOBAL CREDIT MARKET FUND, LP ("TCA") at the address set forth on the signature page hereof, or their assign (collectively "Lenders"). This Agreement is entered into with reference to the following facts:

A.     Borrower ("Borrower") is the producer on behalf of Esplanade Pictures LLC of that certain motion picture currently entitled <u>Booty Patrol</u> (the "Picture").

B.     Borrower has requested that the Lenders lend and advance funds to Borrower, in the aggregate amount (the "Commitment Amount") of Eight Hundred Forty Thousand Dollars ($840,000.00) in lawful money of the United States, for use in (i) paying production costs of the Picture and (ii) reimbursing Borrower for costs previously incurred in connection with the Picture. The Commitment Amount includes the principal amount of the loan, plus certain fees and expenses as set forth more fully herein. The Commitment Amount of each Lender is set forth herein.

C.     The Lenders or their assigns are willing to make the Commitment Amount available as a loan to Borrower (the "Loan") upon the terms and conditions set forth herein and in consideration of Borrower's agreements, representations and warranties contained herein. All reference to Lenders shall be either to Voodoo and TCA or their assigns.

NOW, THEREFORE, the parties hereto hereby agree as follows:

1.     **DEFINITIONS.**

The following terms used in this Agreement or in any Note, certificate, report or other document made or delivered pursuant to this Agreement shall have the following meanings:

1.1.     "Advances" has the meaning specified in paragraph 2.1 hereof.

1.2.     "Affiliated Person" means any Person which directly or indirectly controls, is controlled by or is under common control with Borrower. For the purposes of this definition, "control" (including with corresponding meanings, the terms "controlled by" and "under common control with"), as applied to any Person, means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of that Person, whether through the ownership of voting securities, by contract or otherwise.

1.3.     "Borrower" means New Moon Pictures LLC, a Louisiana limited liability company.

1.4.     "Business Day" means any day other than a Saturday, Sunday or holiday scheduled by law for commercial banking institutions in the City of New Orleans, Louisiana.

MA-006856

1.5. "Collateral" means, collectively the Tax Credit Rights, the Tax Credit Proceeds and all proceeds, products, additions and accessions of the Tax Credit Rights and the Tax Credit Proceeds, the copyright to and all distribution proceeds from the Picture as reflected in the Copyright Mortgage attached as Exhibit "B"

1.6. "Collateral Proceeds" means all monies or other consideration derived from any sale, assignment or other disposition of the Collateral or any portion thereof.

1.7. The "Commitment Amount" is Eight Hundred Forty Thousand Dollars ($840,000.00).

1.8. "Commitment Period" means the period from the date hereof through the Maturity Date.

1.9. "Dollars" or "$" means the legal currency of the United States.

1.10. "Event of Default" has the meaning specified in paragraph 9.1 hereof.

1.11. "Indebtedness" means all of Borrower's monetary obligations to the Lenders hereunder, under the Note and under the other documents, instruments and agreements to be executed by Borrower pursuant hereto, including, without limitation, all Advances extended to Borrower hereunder, interest thereon, and all fees, costs and expenses Borrower are obligated to pay the Lenders hereunder or thereunder.

1.12. "Interest and Cost Reserve" has the meaning specified in paragraph 2.8.4 hereof.

1.13. "Interest Rate" has the meaning specified in paragraph 2.8.1 hereof.

1.14. "Loan" has the meaning specified in paragraph D, above.

1.15. "Loan Documents" means this Agreement, the Note and each and every document, instrument and agreement required to be delivered hereunder or thereunder or contemplated hereby or thereby.

1.16. "Loan Fee" has the meaning specified in paragraph 2.2 hereof.

1.17. "Maturity Date" has the meaning set forth in paragraph 2.7 hereof.

1.18. "Note" means the promissory note to be made and delivered by Borrower to the Lenders pursuant to paragraph 2.6 hereof, in the forum attached as Exhibit "A."

1.19. "Overdue Rate" has the meaning specified in paragraph 2.8.2 hereof.

1.20. "Person" means any entity, corporation, company, association, partnership, joint venture, joint stock company, unincorporated organization, trust, individual (including personal representatives, executors and heirs of a deceased individual), nation, state,

MA-006857

government (including governmental agencies, departments, bureaus, boards, divisions and instrumentalities thereof), trustee, receiver or liquidator.

1.21.   "Picture" has the meaning specified in paragraph A, above.

1.22.   "Security Interest" means a security interest in the Collateral and has the meaning given to such term by the Uniform Commercial Code of the State of California.

1.23.   "Tax Credit Proceeds" means all monies or other consideration of any kind or nature derived from any sale, assignment or other disposition of the Tax Credit Rights or any portion thereof.

1.24.   "Tax Credit Rights" means all right, title and interest of every kind and nature in and to any and all film production services tax credits or other similar benefits relating to the Picture, including, without limitation, the Louisiana Motion Picture Investor Tax Credit, conferred by any Louisiana governmental entity, including, without limitation, the Louisiana Department of Economic Development Office of Entertainment Industry Development.

2.   <u>AGREEMENT TO LEND.</u>

2.1 <u>Commitment</u>.   Subject to the terms and conditions contained herein, including, without limitation, satisfaction of the conditions precedent set forth in paragraph 6 hereof, the Lenders each for themselves hereby agrees to make advances ("Advances") of funds to Borrower under the Loan in an aggregate principal amount not to exceed Eight Hundred Forty Thousand Dollars ($840,000.00);

A.   $625,000.00 upon certification of the Picture as a Louisiana motion picture by the Louisiana Department of Economic Development and full execution of this Agreement to be advanced as follows:

| Lender | Amount |
|--------|--------|
| TCA | $250,000 |
| Voodoo | $375,000 |

B.   $135,000.00 upon submission to the production auditor of production expenses through completion of principal photography of the Picture, to be advanced as follows:

| Lender | Amount |
|--------|--------|
| Voodoo | $135,000 |

C.   $80,000.00 upon completion of the final mix of the Picture, of which $40,000.00 will be an interest reserve for payment of interest on the Loan, to be advanced as follows:

Booty Patrol
Loan and Security Agreement                    3

MA-006858

| Lender | Amount |
|--------|--------|
| Voodoo | $80,000 |

The proceeds set forth in Paragraph 2.1A above shall be used to pay all finance charges, related party payments and completion bond fees prior to release of such funds to Borrower for payment of the balance of production costs of the Picture. Nothing contained in this paragraph 2.1 shall prohibit the Lenders from making Advances in excess of the Commitment Amount which the Lenders are otherwise entitled (but not obligated) to make hereunder. Amounts repaid cannot be reborrowed.

    2.2.   Loan Fee. As consideration for the Lenders' entering into this Agreement and its commitment to make the Loan, Borrower shall pay to the Lenders a loan fee (the "Loan Fee") in the amount of Fifty Thousand Dollars ($50,000.00) payable $25,000.00 on full execution hereof and the balance on maturity, to be payable 30% to TCA and 70% to Voodoo. The Lenders' obligation to make any Advances hereunder is expressly conditioned upon and subject to payment of the Loan Fee.

    2.3.   Initial Disbursements. For the benefit of and on behalf of Borrower, the Lenders shall pay the following amounts concurrently with the execution of this Agreement and from the proceeds of the initial Advance under the Loan: (i) to the Lenders, the Loan Fee; and (ii) to Borrower as provided in Paragraph 2.1

    2.4.   Event of Default. The Lenders shall have no obligation to make any Advances under the Loan at any time after the occurrence of an Event of Default, unless such Event of Default has been cured within the applicable time period permitted hereunder (if any).

    2.5.   Request for Advances. Borrower shall provide written notice to the Lenders (in the form of a borrowing certificate signed by Borrower) at least three (3) Business Days prior to the date Borrower requires any Advance under the Loan. Such notice shall specify the proposed date of borrowing and the amount thereof. Borrower acknowledges and agrees that the Lenders shall be under absolutely no duty or obligation to make any Advances hereunder until all of the conditions precedent set forth in paragraph 6, below, have been satisfied.

    2.6.   Note.

    2.6.1.   Execution and Delivery. Prior to the Lenders' making the first Advance under the Loan, and as a condition thereof, Borrower shall execute in the Lenders' favor and deliver to the Lenders a promissory note (the "Note") in a form of Exhibit "A," in the principal amount of Eight Hundred Forty Thousand Dollars ($840,000.00).

    2.6.2.   Balance of Note. The amount and date of all Advances under the Loan, and all amounts paid or repaid on the Note, shall be indicated in the Lenders' books so that the principal balance owing from Borrower to the Lenders on the Note and the repayment of interest will be reflected therein; and the parties hereto agree that said balance and each entry shall be presumptive evidence that such balance exists, and that such payments were made, in the amounts written.

MA-006859

2.6.3.    <u>Payment In Full</u>.  The Note shall be marked "canceled" and returned to Borrower when Borrower has indefeasibly paid the Indebtedness in full.

2.7.    <u>Maturity Date</u>.  Principal and interest on the Note shall be immediately due and payable on the earlier of (i) six months after the date hereof or (ii) the date amounts outstanding under this Agreement and the Note become immediately due and payable pursuant to paragraph 9.2, below (the "Maturity Date").

2.8.    <u>Interest</u>.

2.8.1.    <u>Rate</u>.  The unpaid principal balance will bear interest at an annual rate (the "Interest Rate") of fifteen percent (15%).  Interest accruing on each Advance shall be payable monthly in arrears and on the date all sums payable hereunder are actually paid; provided, however, that if any interest payment is not paid when due or if the Note is not paid in full on its Maturity Date, interest shall continue to accrue after such due date at the Overdue Rate (as defined below) both on the principal amount of the Note and the aggregate interest accrued on the Note and unpaid as of its Maturity Date.  The Lenders shall make Advances under the Loan out of the Interest and Cost Reserve to make interest payments hereunder.  If, at the time an interest payment is due hereunder, there are insufficient funds remaining in the Interest and Cost Reserve to pay the interest payment due hereunder in full, Borrower shall pay directly to the Lenders all amounts necessary to cover such interest payment.

2.8.2.    <u>Overdue Rate</u>.  Notwithstanding the foregoing, should an Event of Default occur hereunder, the Interest Rate on the amount of the Indebtedness evidenced by the Note and all other Indebtedness then owing hereunder shall be increased to a rate (the "Overdue Rate") equal to the lesser of (i) the maximum legal rate of interest (if any) permitted by applicable law or (ii) a rate which is five percent (5%) per annum above the Interest Rate.  Interest calculated at the Overdue Rate shall be due and owing, and shall accrue and be payable, from the date of the applicable Event of Default to and including the date of payment in full of the amount owing under the Note and all other Indebtedness then owing, or the date of Borrower's cure of the Event of Default (but only if such cure is permitted by the Lenders as provided in paragraph 9.3 hereof).  This provision, or the Lenders' reliance thereon, or Borrower's payment and the Lenders' acceptance of any interest at the Overdue Rate pursuant to this paragraph 2.8.2, shall not be deemed a waiver of any Event of Default or of any of the Lenders' rights and remedies hereunder or otherwise.

2.8.3.    <u>Maximum Rate</u>.  If the provisions of this Agreement or the Note would at any time otherwise require payment to the Lenders of an amount of interest in excess of the maximum amount then permitted by the law applicable to the Advances, such interest payments to the Lenders shall be reduced to the extent necessary so as to ensure that the Lenders shall not receive interest in excess of such maximum amount.

2.8.4.    <u>Interest and Cost Reserve</u>.  Notwithstanding anything to the contrary contained herein, the Lenders shall not be obligated to advance under the Loan, and will hold back as a reserve against the Commitment Amount, the sum of Forty Thousand Dollars ($40,000.00) (the "Interest and Cost Reserve") for the payment of the Loan Fee, the Lenders' legal fees, accrued interest and other Indebtedness hereunder.

MA-006860

3.      **PAYMENT OF INDEBTEDNESS.**

3.1.    <u>Voluntary Prepayments</u>.  Borrower shall have the right to prepay the principal of the Note in whole or in part without premium or penalty, provided that, at the time of any such prepayment, the accrued interest on the Loan is paid in full.

3.2.    <u>Mandatory Repayments</u>.  The Indebtedness shall be repaid as follows:

3.2.1.    Borrower shall immediately repay all Advances outstanding under the Loan to the extent that the sum of the aggregate amounts outstanding under the Loan at any time exceeds the Commitment Amount.

3.2.2.    Until such time as the Indebtedness has been indefeasibly repaid in full, Borrower shall pay, or cause to be paid, to the Lenders all Tax Credit Proceeds.  Borrower shall direct in writing all parties obligated to make payments of any Tax Credit Proceeds to Borrower to pay such amounts by wire transfer directly to the accounts set forth on the signatures page hereof (or to such other address or account as the Lenders may designate in writing).  If any Person pays any such sums to Borrower or any other Person, Borrower or such other Person, as applicable, shall receive such sums as the Lenders' trustee and, promptly upon receipt thereof, shall remit such sums (or cause such sums to be remitted) to the Lenders as set forth above.

3.2.3.    The Indebtedness shall be repaid in full on or before the Maturity Date.

3.3.    <u>Application of Payments</u>.

3.3.1.    All payments hereunder shall be applied 30% to TCA and 70% to Voodoo.

3.3.2.    Until the Indebtedness has been indefeasibly repaid in full in accordance with the terms and conditions hereof, all amounts paid to the Lenders by Borrower (including, without limitation, all amounts paid to the Lenders pursuant to paragraph 3.2, above), or by any other Person on Borrower's behalf, shall be applied by the Lenders to reduce the Indebtedness in the following priority: first, to amounts payable to the Lenders in reimbursement of its costs and expenses pursuant to paragraphs 2.8, 7.4 and 7.5 hereof, to the extent the same are not duly and timely paid to the Lenders as required by paragraphs 2.8, 7.4 and 7.5 hereof; second, to pay all interest payable hereunder; third, to repayment of the principal amount of the Note; and last, to repayment of any other Indebtedness.  Upon repayment in full of the Indebtedness, the Lenders shall remit all amounts in excess of the Indebtedness received by the Lenders with respect to the Picture in accordance with the provisions of paragraph 4.1 of the Interparty Agreement.

3.4.    <u>Enforcement by Borrower</u>.  Until the Indebtedness is repaid in full, Borrower shall, at its own expense, promptly make collection, and take all legal action necessary to enforce collection, of the Collateral Proceeds, and shall remit all sums so collected to the Lenders.

3.5.    <u>Making of Payments; Offset</u>.

MA-006861

    3.5.1  <u>Making of Payments</u>.  All payments of principal or interest on the Note shall be made in immediately available funds to the Lenders.  All such payments shall be made to the Lenders by wire transfer or by check to the address and account set forth in paragraph 3.2.2, above (or to such other account at such other address or account as the Lenders may designate in writing), not later than 11:00 a.m., Pacific Time, on the date due, as provided above; and funds received after that hour shall be deemed to have been received by the Lenders on its next following Business Day.

    3.5.2  <u>Offset</u>.  In addition to and not in limitation of all rights of offset that the Lenders may have under applicable law, upon the occurrence of any Event of Default, the Lenders shall have the right to appropriate and apply to the payment of principal and accrued interest (if any) on the Note and any amounts due the Lenders hereunder any and all balances, credits, deposits, accounts or monies of Borrower then or thereafter on deposit with the Lenders.

4.    **SECURITY INTEREST**.

    4.1.  <u>Assignment of Proceeds/Mortgage of Copyright</u>.  As security for Borrower's performance of its obligations hereunder, Borrower hereby assigns and grants to the Lenders all of Borrower's right, title and interest of every kind and nature whatsoever in and to the Tax Credit Proceeds, and in and to the copyright and all distribution proceeds of the Picture by execution and filing with the United States Copyright Office a Mortgage of Copyright in the form attached hereto as Exhibit "B."

    4.2.  <u>The Lenders' Security Interest</u>.  As further security for the repayment of the Indebtedness, and for Borrower's full and prompt performance of the terms and conditions of this Agreement and of the other instruments, documents and agreements executed in connection herewith, Borrower hereby irrevocably grants the Lenders a Security Interest in and to, and assigns to the Lenders all of Borrower's right, title and interest in and to the Collateral.

    4.3.  <u>Perfection of Security Interest</u>.  Concurrently with the execution of this Agreement, Borrower shall execute and deliver, or cause to be executed and delivered, to the Lenders any and all instruments which the Lenders may request to perfect the Security Interest granted hereunder and to effectuate the purposes and intent hereof.

    4.4.  <u>Authorization to File Financing Statements</u>.  Borrower hereby authorizes the Lenders to file Uniform Commercial Code Financing Statements in such jurisdictions as the Lenders may deem appropriate in order to perfect its Security Interest hereunder.

    4.5.  <u>Release of Security Interest</u>.  Upon repayment in full of the Indebtedness and Borrower's full and complete performance of its obligations hereunder, the Lenders shall promptly release the Security Interest conveyed to the Lenders hereunder and shall execute such termination statements and other documents as may be necessary to evidence the same, all without recourse upon or warranty by the Lenders and at Borrower's sole cost and expense.

MA-006862

5.    **REPRESENTATIONS AND WARRANTIES.**

In order to induce the Lenders to enter into this Agreement, Borrower agrees, represents and warrants to the Lenders as follows (which agreements, representations and warranties shall survive the execution and delivery, and any termination, of this Agreement):

5.1.    Organization, Etc.  Borrower is a limited liability company in good standing duly organized under the laws of the state of Louisiana, and Borrower has the power and authority to own its properties and to transact the business in which it is engaged in all places at which it engages in business.  All actions previously taken and agreements previously entered into by Borrower in connection with the Collateral were duly authorized and constitute Borrower's actions and obligations.  Borrower's principal place of business and the place where Borrower's books and records are maintained are at the address set forth herein.  Borrower shall notify the Lenders immediately of any change of its principal place of business or of the place where its books and records are maintained.

5.2.    Financial Statements and Other Information.  All financial statements, information and other data regarding Borrower and the Picture furnished to the Lenders hereunder, if any, are, in all material respects, accurate and correct, the financial statements have been prepared in accordance with the customary standards typically applicable to similar entities in the entertainment industry and accurately represent the financial condition of the persons or companies to whom or which such statements relate.  No material adverse changes have occurred since the dates of such statements.  No liabilities exist, contingent or otherwise, not shown on such financial statements.

5.3.    Corporate Power and Authority.  Borrower has the power and authority to execute, deliver and carry out the terms and provisions of this Agreement and to execute and deliver the Note, and all documents, instruments and agreements to be executed and delivered by Borrower hereunder, and has taken all action necessary to authorize the execution and delivery of this Agreement, the borrowing hereunder and the execution and delivery of the Note, and the other Loan Documents.

5.4.    No Conflicts.  Neither the execution and delivery of this Agreement or any other document, instrument or agreement to be executed pursuant hereto, nor the consummation of the transactions contemplated by this Agreement, nor compliance with the terms and provisions hereof or with the terms and provisions of the Note or any other instrument, agreement or document executed in connection herewith will violate any provision of law or of any applicable regulation, order or decree of any court or governmental instrumentality or administrative body or agency, will conflict or be inconsistent with, or will result in any breach of, any of the terms, covenants, conditions or provisions of any mortgage, indenture, deed of trust, agreement or other instrument to which Borrower is a party, by which it may be bound or to which it may be subject, or will violate any provision of Borrower's articles of organization.

5.5.    No Pending Legal Actions.  There are no actions, suits or proceedings, pending or threatened, against or affecting Borrower or the Collateral before any court or governmental or administrative body or agency which might result in any material adverse change in Borrower's business, operations, properties or assets or in Borrower's condition,

MA-006863

financial or otherwise, or the Picture. Borrower is not in default under any applicable statute, rule, order or regulation of any governmental authority, bureau or agency having jurisdiction over it.

5.6.  Binding Obligation. This Agreement and the Note, and each document, instrument or agreement executed by Borrower and delivered to the Lenders hereunder, when executed and delivered pursuant hereto, will constitute legal, valid and binding obligations of Borrower, enforceable against Borrower in accordance with their respective terms and conditions.

5.7.  Valid Security Interest. This Agreement and the other instruments, agreements and documents to be executed and delivered to the Lenders hereunder will effect (after the proper recordation of those documents required to be recorded) a valid first priority security interest in favor of the Lenders in the Collateral.

5.8.  No Other Consent. In connection with the execution, delivery, performance, validity and enforceability of this Agreement, and the Note or any other instrument, agreement or document to be executed and delivered hereunder, no consent of any Person, and no consent, license, approval, authorization, registration or declaration with any governmental authority, bureau or agency is required.

5.9.  Ownership. Borrower owns all rights, property and interests assigned or conveyed by it to the Lenders hereunder.

5.10.  No Third Party Rights. Neither Borrower nor any other Person has conveyed to any other Person any rights in or to the Collateral or the proceeds thereof, except to Voodoo pursuant to the Voodoo Investment Documents. Except as expressly acknowledged herein, Borrower (nor anyone else on its behalf) has not transferred, assigned or encumbered any rights previously (or hereafter to be) acquired by Borrower with respect to the Collateral prior to the date hereof and will not do so after the date hereof. Except as expressly noted above, no Person has any rights of any kind in or to the Collateral. No rights, property or interests exist or will be granted to any third party which are in any way inconsistent with or adversely affect the Lenders' rights and Security Interest under this Agreement.

5.11.  No Litigation. No litigation, suits, proceedings or claims exist or are threatened relating to the Collateral which would adversely affect the rights and Security Interest granted to the Lenders hereunder.

5.12.  No Insolvency Proceeding. No insolvency proceedings of any nature are now pending or threatened by or against Borrower. Except as permitted pursuant to paragraph 5.10, above, none of the existing or future obligations of Borrower or any other Person are or will be secured by a security interest in any collateral inconsistent with or having priority over the Security Interest granted to the Lenders hereunder.

5.13.  Loan Proceeds. None of the Loan proceeds shall be used, directly or indirectly, for any purpose other than to reimburse the Lenders for the Purchase Price, to reimburse Borrower for costs of production of the Picture previously paid by Borrower and to pay interest, fees and expenses as provided herein.

Booty Patrol
Loan and Security Agreement                    9

MA-006864

5.14.   <u>Timely Performance</u>.  Borrower will duly and timely perform all of its obligations and agreements hereunder.

5.15.   <u>Ownership of Margin Stock</u>.  Borrower does not presently, and will not prior to repayment in full of the Indebtedness, own any "margin stock" (within the meaning of Regulation U of the Board of Governors of the Federal Reserve System of the United States). Borrower is not engaged in the business of extending credit for the purpose of purchasing or carrying any margin stock, and no part of the Loan proceeds will be used, directly or indirectly, to purchase or carry any margin stock or to extend credit to others for the purpose of purchasing or carrying any margin stock or to reduce or retire any indebtedness originally incurred to purchase or carry any margin stock within the meaning of said Regulation U.

5.16.   <u>ERISA</u>.  Neither Borrower nor any member of a "controlled group of corporations" (as defined in Section 1563 of the Internal Revenue Code of 1986, as amended), nor any trade or businesses which are under common control with Borrower (as provided in Section 414(c) of the Internal Revenue Code), nor any member of any affiliated service group with Borrower (as provided in Section 414(m) of the Internal Revenue Code) now has, nor will they have prior to repayment in full of the Indebtedness, any plan subject to Title IV of the Employee Retirement Income Security Act of 1974, as amended, or any such plan to which Borrower, any member of a "controlled group" or affiliated service group, or any trade or business under common control with Borrower are required to contribute on behalf of its employees.

5.17.   <u>Compliance With Laws</u>.  Borrower has complied in all material respects with all provisions of all applicable laws and regulations, including those relating to Borrower's ownership of real or personal property, the conduct and licensing of Borrower's business, the payment and withholding of taxes, ERISA and other employee matters, safety and environmental matters.

5.18.   <u>No Breaches</u>.  No condition, event or act has occurred which, with notice or lapse of time, or both, would constitute a breach by Borrower of any covenant or other term or condition of this Agreement or any other agreement entered into in connection with this Agreements.

5.19.   <u>Taxes</u>.  Borrower has filed all tax returns and other reports which it was required by law to file on or prior to the date hereof and have paid all taxes, assessments, fees and other governmental charges and penalties and interest, if any, against it or its property, income, or franchise, that are due and payable (except to the extent that (i) any such taxes, assessments, fees and other governmental charges and penalties and interest are diligently contested in good faith by appropriate proceedings and proper reserves are established on Borrower's books, and (ii) a stay of enforcement of any liens arising from the nonpayment thereof when due is in effect).

6.   **CONDITIONS PRECEDENT**.

Notwithstanding anything to the contrary contained herein, the Lenders shall not be obligated to make any Advances under the Loan unless all of the following conditions have been satisfied at the time of each Advance:

Booty Patrol
Loan and Security Agreement                    10

6.1.   <u>Required Documents</u>.   Borrower has delivered to the Lenders the following documents, instruments and agreements in form and substance satisfactory to the Lenders and its counsel:

6.1.1.   <u>Loan Agreement</u>.  This Agreement, duly executed by Borrower.

6.1.2.   <u>Note and Copyright Mortgage</u>.  The Note and  Copyright Mortgage, duly executed by Borrower.

6.1.3.   <u>UCC Reports</u>.  Reports acceptable to the Lenders confirming that there are no filings of record which indicate that another Person has rights or a Security Interest in the Collateral (other than as expressly provided for herein) which would be inconsistent with or have priority over the Security Interest granted to the Lenders hereunder.

6.1.4.   <u>Opinion of Counsel</u>.   Favorable opinions from Borrower's independent legal counsel.

6.1.5.   <u>Articles of Organization; Operating Agreement</u>.   Borrower's articles of organization, together with a certificate of the date of filing thereof, a letter of good standing from the appropriate authorities in the state of Borrower's formation, and a copy of Borrower's operating agreement.

6.1.6.   <u>Company Resolutions</u>.  Certified copies of resolutions authorizing the execution, delivery and performance of this Agreement, as well as all of the transactions contemplated thereby, and such other documents relating thereto as the Lenders may reasonably request.

6.1.7.   <u>Initial Certification</u>.  A copy of the initial certification from the State of Louisiana indicating Borrower's right to the Tax Credit Rights.

6.1.8.   <u>Additional Documents</u>.   Any such additional documents, instruments or agreements that the Lenders may reasonably require to effectuate the purposes of this Agreement.

6.2.   <u>Costs and Expenses</u>.  Payment of all of the Lenders' costs and expenses, including, without limitation, all of the Lenders' legal fees.

6.3.   <u>Payment of the Loan Fee</u>.  Payment of the Loan Fee.  The Lenders agrees that, upon Borrower's request, Borrower may pay the Loan Fee to the Lenders as part of the first Advance under the Loan.

6.4.   <u>Event of Default</u>.  At the time of each disbursement or Advance under the Loan, no Event of Default, and no condition, event or act which, with notice or lapse of time, or both, would constitute an Event of Default hereunder, shall exist.

6.5.   <u>Representations and Warranties</u>.  All of Borrower's representations and warranties herein, or otherwise made in writing in connection herewith, shall be true and correct

MA-006866

with the same effect as though the representations and warranties had been made on the date of each Advance under the Loan.

      6.6.   <u>Corporate; Legal Proceedings</u>.  All corporate and legal proceedings, and all documents, instruments and agreements executed or to be executed in connection with the transactions contemplated by this Agreement, shall be reasonably satisfactory in form and substance to the Lenders and its counsel.

      6.7.   <u>Borrower's Financial Condition</u>.  The Lenders' obligation to make any Advances under the Loan shall be subject to there not having occurred any material adverse change in Borrower's financial condition at the time the Lenders is to make any Advances under the Loan.

      6.8.   <u>No Orders, Etc.</u>  No order, judgment or decree of any court, arbitrator or governmental authority shall purport to enjoin or restrain the Lenders from making the Loan and making the Advance of the Loan requested on the date of such Advance shall not violate Regulations U, T or X of the Federal Reserve Board.

      6.9.   <u>New Litigation and Changes in Pending Litigation</u>.  Borrower shall have disclosed to the Lenders in writing all pending or (to the best of Borrower's knowledge) threatened litigation, arbitration proceedings or governmental proceedings against Borrower where the amount in controversy is equal to or greater than Twenty-Five Thousand Dollars ($25,000.00) or where injunctive relief is sought against Borrower.  In addition, Borrower shall have disclosed all material developments which have occurred in any such litigation, arbitration proceedings or governmental proceedings which, in the Lenders' opinion, are likely to materially adversely affect Borrower's financial position or business, or impair Borrower's ability to perform its obligations under this Agreement or the Note.

     7.    **AFFIRMATIVE COVENANTS.**

      Borrower hereby covenants and agrees as follows:

      7.1.   <u>Books and Records</u>.  Until the Indebtedness is repaid in full, Borrower shall maintain true, full and complete books and records of Borrower's financial transactions with respect to the Collateral in accordance with generally accepted accounting principles in the motion picture industry, and shall permit the Lenders (or its designee) to examine such books and records at such times during reasonable business hours as the Lenders (or its designee) may request and take excerpts therefrom and make copies thereof.  Until such time as the Indebtedness is repaid in full, all such books and records (or duplicates thereof) shall be maintained at Borrower's principal places of business and shall not be maintained in any other place without the Lenders' prior written consent.

      7.2.   <u>Notice of Legal Proceedings</u>.  Borrower shall promptly give the Lenders written notice of all litigation, proceedings, controversies (which in any way may adversely affect the Lenders' rights and Security Interest hereunder or under any of the documents referred to herein) or claims materially affecting, the Collateral or any of Borrower's rights with respect thereto, and, where applicable, Borrower shall appear in and defend any and all such actions and proceedings and shall obtain and furnish to the Lenders from time to time, upon demand, all

MA-006867

instruments, agreements, financial statements, documents, releases and subordinations of claims or liens as the Lenders may require, consistent with this Agreement, to maintain the priority of the Lenders' Security Interest under this Agreement.

7.3.  Corporate Existence; Change In Ownership.  Borrower shall, at all times hereunder, maintain its corporate existence.  Borrower shall give the Lenders not less than thirty (30) days prior written notice of any intended change in ownership of all or substantially all of Borrower's outstanding shares, or of Borrower's name; provided, however, that Borrower's inadvertent failure to timely give such notice which does not adversely affect the Lenders' rights hereunder shall not constitute a breach hereof unless not tendered to the Lenders within five (5) Business Days after Borrower's receipt of a written request therefor.

7.4.  Costs and Expenses.  Whether or not the Lenders actually makes the Loan contemplated hereunder, Borrower shall pay all of the Lenders' actual out-of-pocket costs and expenses (including, without limitation, the Lenders' reasonable attorneys' fees) incurred in connection with this Agreement and the Collateral, including, without limitation, all costs and expenses incurred in connection with the negotiation and preparation of this Agreement and the other agreements and documents referred to herein or the Lenders' enforcement of its rights hereunder or in connection with the realization upon any Collateral.  Such costs and expenses (including, without limitation, court costs and attorneys' fees) shall constitute Advances hereunder (which may exceed the Commitment Amount) and shall be secured and recoupable and shall bear interest in the same manner as provided for in paragraph 2, above; provided, however, that Borrower shall pay any reasonable attorneys' fees, court costs and out-of-pocket expenses incurred by the Lenders in connection with this Agreement or the Collateral immediately upon demand by the Lenders.  At the Lenders' election, the Lenders shall have the right (and is hereby authorized by Borrower) to make additional Advances under the Loan for the repayment to the Lenders of all such amounts.

7.5.  Indemnity.  Borrower shall, at all times, defend, indemnify and hold the Lenders and its shareholders, officers, directors, employees, representatives and agents harmless from and against any and all liabilities, claims, demands, causes of action, losses, damages, expenses (including, without limitation, reasonable attorneys' fees), costs, settlements, judgments or recoveries arising out of or resulting from (i) any breach of any of Borrower's representations, warranties, agreements or covenants made herein, (ii) any suit or proceeding of any kind or nature whatsoever against the Lenders arising from or connected with the transactions contemplated by this Agreement or any of the documents, instruments or agreements to be executed pursuant hereto or any of the rights and properties assigned to the Lenders hereunder (except those arising due to the Lenders' gross negligence or willful misconduct), or (iii) any suit or proceeding that the Lenders may in good faith deem necessary or advisable to institute, in the name of the Lenders, Borrower or both, against any other Person for any reason whatsoever to protect the Lenders' rights hereunder, or any rights granted to the Lenders, all of which shall be charged to and paid by Borrower and shall be secured by the Lenders' Security Interest in the Collateral.

7.6.  Further Assurances.  If the Lenders requests, Borrower shall execute and deliver, or cause to be executed and delivered, to the Lenders the documents referred to in paragraph 6 hereof and such further instruments, documents and agreements as the Lenders may

reasonably require, and shall do, or cause to be done, such further acts as the Lenders may reasonably require to carry out or effectuate the purposes of this Agreement and enable the Lenders to exercise its rights and remedies hereunder. If Borrower fail to execute or deliver to the Lenders any such further instruments, documents or agreements within three (3) Business Days after the Lenders' request therefor, then the Lenders is hereby appointed as Borrower's irrevocable attorney-in-fact, with full power of substitution and with the right, but not the obligation, to do any and all acts and things necessary to execute, acknowledge and deliver any and all such further instruments, documents or agreements, in Borrower's names and on Borrower's behalf, which appointment shall be deemed to be a power coupled with an interest and shall be irrevocable.

7.7.   Notice of Events of Default.   Borrower shall give the Lenders prompt written notice of all Events of Default under any of the terms or provisions of this Agreement and of any changes in management, litigation, or of any other matter which has resulted in or may result in a materially adverse change in Borrower's financial condition or operations.

7.8.   Fair Labor Standards Act.   Borrower shall comply in all respects with the Fair Labor Standards Act.

7.9.   Taxes and Other Liabilities.   Borrower shall pay and discharge, before the same become delinquent and before penalties accrue thereon, all taxes, assessments and governmental charges upon or against it or upon its income or profits or upon any of its properties and all of Borrower's other liabilities at any time existing, except to the extent and so long as: (i) the same are being contested in good faith and by appropriate proceedings in such manner as not to cause any materially adverse effect upon its financial condition or the loss of any right of redemption from any sale thereunder; and (ii) Borrower has set aside on its books reserves (segregated to the extent required by generally accepted accounting principles) adequate with respect thereto; and further to pay all governmental charges or taxes (except income, franchise or other similar taxes of the Lenders) at any time payable or ruled to be payable with respect to the existence, execution or delivery of this Agreement or the other Loan Documents by reason of any existing or hereafter enacted federal or state statute.

7.10.   Compliance.   Borrower shall comply with all laws, rules and regulations relating to and shall pay prior to delinquency all license fees, registration fees, taxes, guild or union pension, health and welfare payments, supplemental market, reuse and other required payments and assessments and all other charges, including without limitation non-governmental levies or assessments, which may be levied upon or assessed against, or which may become a lien on, the ownership, operation, possession, maintenance, exploitation, exhibition or use of, the Collateral, or which create or may create a lien upon the Collateral, or any part thereof. Borrower shall pay prior to delinquency all required guild or union residual payments arising with respect to the Picture.

8.   **NEGATIVE COVENANTS.**

8.1.   Written Consent.   Borrower hereby covenants and agrees that, as long as this Agreement is in effect and until Borrower's obligations to the Lenders hereunder are fully discharged, Borrower will not, without first having procured the Lenders' written consent:

MA-006869

8.1.1.  wind up, liquidate or dissolve its affairs, or sell, lease, license, transfer, or otherwise dispose of or grant an interest in all or substantially all of its properties and assets, or change its corporate or trade name or modify its corporate existence;

8.1.2.  create, assume or suffer to exist any security interest, mortgage, pledge, encumbrance, assignment, lien or charge of any kind upon the Collateral (other than as permitted pursuant to paragraph 5.10, above).

8.2.    Use of Funds.  Borrower shall not use any funds disbursed by the Lenders under the Loan for any purpose or thing other than to reimburse the Lenders for the Purchase Price, to reimburse Borrower for costs of production of the Picture previously paid by Borrower, and to pay the Lenders' fees, costs and expenses as set forth herein.

9.      **EVENTS OF DEFAULT.**

9.1.    Specified Events of Default.  Each of the following hereby constitutes and is referred to herein as an "Event of Default":

9.1.1.  Borrower's failure to make (or cause to be made) any payments due to the Lenders hereunder when the same are due;

9.1.2.  Borrower's default in the due and timely observance or performance of the material terms, provisions, covenants, conditions, agreements or obligations contained in this Agreement, the Note or in any other agreement relating to the Loan or the Collateral which would adversely affect the validity, perfection or priority of the Lenders' Security Interest in the Collateral, or the value of the Collateral or the Note;

9.1.3.  Borrower's failure to perform or observe, in a due and timely manner, any of the other material terms, provisions, covenants, conditions, agreements or obligations contained herein or in any other agreement, contract, indenture, document or instrument executed, or to be executed, by Borrower in connection with this Agreement or pursuant hereto (*i.e.*, other than those subject to the immediately preceding paragraph 9.1.2);

9.1.4.  the material falsity of any financial statement given to the Lenders by Borrower, or of any representation or warranty made by Borrower in writing in connection with this Agreement or in connection with the instruments, documents and assignments to be executed by Borrower pursuant hereto;

9.1.5.  the default by any third party in such party's observance or performance of any material term, covenant, condition, warranty or representation made or agreed to in any agreement referred to herein that, in the Lenders' good faith business judgment, would adversely affect or lessen any of the rights granted to the Lenders under this Agreement, or under any instruments, documents or agreements executed by Borrower in connection herewith;

Booty Patrol
Loan and Security Agreement

15

MA-006870

9.1.6. the suspension by Borrower of its business operations which suspension would in any way materially and adversely affect the Lenders' rights and Security Interest hereunder or under any documents referred to herein;

9.1.7. the issuance or levy of any warrant of attachment, execution or other writ on the proceeds payable pursuant to any agreement referred to herein or secured by the Lenders' Security Interest, if any such attachment, execution or other writ remains undischarged and unstayed for a period in excess of forty-five (45) days or Borrower fails to post (or cause to be posted) an indemnity bond for the maximum liability pursuant to any such attachment, execution or other writ;

9.1.8. if Borrower (i) becomes insolvent or is unable to pay its debts as they mature (including, without limitation, Borrower's failure to pay the Indebtedness), (ii) makes an assignment for the benefit of creditors or to an agent authorized to liquidate any substantial amount of its properties or assets, (iii) files a voluntary petition in bankruptcy or seeking reorganization or to effect a plan or other arrangement with creditors, (iv) files an answer admitting the jurisdiction of any court and the material allegations of an involuntary petition filed pursuant to any Act of the United States Congress or any other applicable country relating to bankruptcy or reorganization, (v) joins in any such petition for an adjudication or for a reorganization or other arrangement, (vi) becomes or is adjudicated a bankrupt, (vii) applies for or consents to the appointment of a receiver or trustee for itself or for any of its properties, assets or business, (viii) allows an order to be entered against it pursuant to any Act of the United States Congress or any other applicable country relating to bankruptcy or reorganization, (ix) allows a receiver or a trustee to be appointed otherwise than on its own application or consent for all or a substantial part of its properties, assets or business, and any such receiver or trustee is not discharged within forty-five (45) days after the date of such appointment;

9.1.9. if there exists or occurs any event or condition which, in the Lenders' good faith business judgment (exercised in the Lenders' sole discretion), is an Event of Default or which would have a material adverse effect on Borrower's ability or obligation to perform its obligations under this Agreement and under the other documents, agreements and instruments to be executed pursuant hereto;

9.1.10. if a final judgment or judgments for the payment of money in excess of Twenty-Five Thousand Dollars ($25,000.00) is entered or affirmed by a court against Borrower or any Affiliated Person from which no further appeal may be taken, and Borrower or the Affiliated Person does not discharge the same or provide for its or their discharge in accordance with its or their terms or procure a stay of execution thereof within forty-five (45) days from the date of entry thereof; or

9.1.11. if any Loan Document ceases to be in full force and effect or an event of default occurs thereunder.

9.2.   Remedies.  Upon the occurrence of any of the Events of Default set forth in paragraph 9.1.8, above, all Indebtedness shall immediately become due and payable.  At the

MA-006871

Lenders' option, upon the occurrence of any other Event of Default, and at any time thereafter if such Event of Default is continuing, the Lenders shall have the following additional remedies:

9.2.1.   Unless such Event of Default is cured within the time period (if any) provided for hereunder, the Lenders may terminate the Lenders' obligation to make any further Advances hereunder and the Lenders may, without presentment, demand, protest or notice of any kind, all of which are hereby expressly waived by Borrower, call the Indebtedness due and payable, if not otherwise then due and payable (anything herein or in the Note or other agreement, contract, indenture, document or instrument to the contrary notwithstanding) and the Maturity Date shall be accelerated accordingly.

9.2.2.   The Lenders shall be entitled to exercise, with respect to the Collateral, all of the rights and remedies available to a secured party upon default under the California Commercial Code (or applicable Uniform Commercial Code) at the time which shall be applicable for the purpose of establishing the relative rights of the Lenders and Borrower, and under procedures to be followed in the event this paragraph becomes operative, including, without limitation, the right to sell the Collateral or any portion thereof and, in addition thereto, the rights and remedies provided for herein and such other rights and remedies as may be provided by law or in equity.

9.2.3.   The Lenders may require Borrower to assemble the Collateral and make it available to the Lenders at a place or places to be designated by the Lenders.

9.2.4.   The Lenders may, in its sole discretion, in its name or in Borrower's names, or otherwise, demand, sue for, collect or receive any money or property at any time payable or receivable on account of or in exchange for, or make any compromise or settlement reasonably deemed desirable with respect to, any of the Collateral, but the Lenders shall be under no obligation to do so.  The Lenders shall consult with Borrower with regard to such matters, provided that in all cases the Lenders' decision shall be final.  The Lenders may extend the time of payment, arrange for payment in installments, or otherwise modify the term of, or release, any of the Collateral, without thereby incurring responsibility to, or discharging or otherwise affecting the liability of, Borrower.  The Lenders will not be required to take any steps to preserve any rights of or against any Person which in any way relate to the Collateral. The Lenders may make such payments and take all such actions as the Lenders reasonably deems necessary to protect the Lenders' security interests in the Collateral or the value thereof, and the Lenders is hereby authorized (without limiting the general nature of the authority conferred herein) to pay, purchase, contest or compromise any encumbrances, charges or liens which in the Lenders' good faith judgment appear to be equal to, prior to or superior to the Lenders' security interests in the Collateral.

9.2.5.   The Lenders may, without notice or demand or legal process, enter upon any premises, or wherever any portion of the Collateral may be, and take possession of the Collateral together with all additions and accessories thereto; demand and receive such possession from any Person who has possession thereof; remove, keep and store the Collateral or any portion thereof, or put a custodian in charge thereof; and take such other

MA-006872

measures as it may deem reasonably necessary or proper for the care or protection thereof.

9.2.6.   The Lenders may, with or without taking possession thereof, sell or cause to be sold all or any portion of the Collateral, at such commercially reasonable price or prices as the Lenders, in its sole and absolute discretion, shall determine, and for cash or on credit or for future delivery, without assumption of any credit risk, ,at any public or private sale, without demand of performance or notice of intention to sell or of time or place of sale; provided, however, that unless the Collateral in the Lenders' possession is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, the Lenders shall give Borrower reasonable notice of the time and place of any public sale thereof or of the time after which any private sale or other intended disposition thereof is to be made.  The requirement of reasonable notice shall be met if notice of the sale or other intended disposition is delivered or mailed, by registered mail, postage prepaid, to Borrower as set forth in this Agreement or such other address as Borrower may have furnished to the Lenders as provided herein, at least ten (10) Business Days prior to the time of such sale or other intended disposition.  The purchaser at any such sale (including, if applicable, the Lenders) shall hold the property sold absolutely free from any claim or right of whatever kind including, without limitation, any equity of redemption, and Borrower hereby waive (to the extent permitted by law) all rights of redemption, stay and appraisal which it now has or may have at any time in the future under any rule of law or statute now existing or hereafter enacted.  Any public or private sale of the Collateral or any part thereof shall be held at such time or times within ordinary business hours and at such place or places as the Lenders may fix in the notice of such sale.  At any such sale, the Collateral, or any portion thereof, to be sold may be sold in one lot as an entirety or in separate parcels, as the Lenders may (in its sole discretion) determine and, if permitted by law, the Lenders may bid (which bid may be, in whole or in part, in the form of cancellation of Indebtedness) for and purchase the Collateral or any portion thereof for the account of the Lenders.  The Lenders shall not be obligated to make any sale of the whole or any part of the Collateral if it determines not to do so, regardless of the fact that notice of sale of the Collateral has been given.  The Lenders may, by announcement at the time and place fixed for sale, without prior notice or publication, adjourn any public or private sale of the Collateral or cause any such sale to be adjourned from time to time, and such sale may, without further notice, be made at the time and place to which it was so adjourned. In case a sale of all or any part of the Collateral is made on credit or for future delivery, the Collateral so sold may be retained by the Lenders until the sale price is paid by the purchaser or purchasers thereof; provided, however, that the Lenders shall not incur any liability in case any such purchaser or purchasers fails to pay for the Collateral so sold and, in case of any such failure, such Collateral may be sold again.

9.2.7.   The Lenders shall be entitled to the appointment of a receiver to take possession of all or any portion of the Collateral and to exercise such powers as the court may confer upon the receiver, and Borrower hereby waive, to the fullest extent permitted by law, notice and the right to receive notice of any application by the Lenders for such appointment; provided, however, that the Lenders shall use reasonable efforts to send Borrower a courtesy notice of such application; provided, however, that the

MA-006873

Lenders' failure to send such notice shall not affect the Lenders' rights under this section or elsewhere hereunder or constitute a breach of this Agreement by the Lenders, and provided further that, notwithstanding any such application or appointment, the Lenders shall be entitled to apply, without notice to Borrower, any cash or cash items constituting Collateral in the Lenders' possession to payment of Borrower's Indebtedness under this Agreement, the Note and the other Loan Documents.

      9.2.8.   Upon any sale of any item of Collateral by the Lenders hereunder (whether by virtue of a power of sale herein granted, pursuant to judicial process or otherwise), a receipt issued by the Lenders or the officer making the sale shall be a sufficient discharge to the purchaser or purchasers of such item or items of Collateral so sold, and such purchaser or purchasers shall not be obligated to see to the application of any part of the purchase money paid to the Lenders or such officer or be answerable in any way for the misapplication or nonapplication thereof.

      9.2.9.   The Lenders or any holder of the Note is hereby authorized at any time and from time to time, without notice to Borrower (any such notice being expressly waived by Borrower), to setoff and apply any and all deposits (general or special, time or demand, provisional or final) at any time held, including, without limitation, any certificate of deposit, and any other Indebtedness at any time owing by the Lenders or such holder of the Note to or for Borrower's credit or account against any and all of Borrower's then-due Indebtedness now or hereafter existing under this Agreement, the Note or any other Loan Document(including, without limitation, any Indebtedness due by reason of any acceleration hereunder), irrespective of whether or not the Lenders or such holder of the Note has made any demand under this Agreement, the Note or any other Loan Document.  The Lenders agrees to promptly notify Borrower after any such setoff and application.  The Lenders' rights under this paragraph 9.2.9 are in addition to any other rights and remedies (including, without limitation, other rights of setoff) which the Lenders may have.

      9.2.10.  The Lenders may, at its option, engage others to exercise or discharge any of its rights or obligations hereunder.  The amounts payable to such others by the Lenders shall be recoupable by the Lenders and secured as provided in paragraph 7.4 hereof.

      9.3.   Cure Period.  With respect to the Events of Default set forth in paragraphs 9.1.1, 9.1.3, 9.1.5 and 9.1.9, above, to the extent that any such Event of Default is capable of being cured, Borrower shall have a period of ten (10) Business Days after receipt of written notice of such Event of Default within which to cure any such Event of Default.  At the Lenders' sole and exclusive option, upon the occurrence of any other Event of Default, and at any time thereafter, the Lenders may permit Borrower to cure such Event of Default, but the Lenders shall have no obligation to do so.  If Borrower is permitted to cure any such Event of Default, as provided herein, and Borrower effectuates such cure within the time period permitted by the Lenders, then the Interest Rate shall not be increased to the Overdue Rate as a result of such Event of Default.

MA-006874

9.4.    Attorney-in-Fact.  Should an Event of Default occur hereunder, Borrower hereby irrevocably designates, constitutes and appoints the Lenders as its true and lawful attorney-in-fact with full power of substitution and with full and irrevocable power (which power shall be deemed coupled with an interest), in Borrower's place and stead and in either Borrower's or the Lenders' name, at any time: (i) to lease, license, sell or otherwise dispose of any rights Borrower may have in or to the Collateral (or to engage others to do so with the costs and expenses thereof to be recoupable by the Lenders as provided in paragraph 7.4 hereof); (ii) to negotiate such lease, license, sale or other agreements and to enter into such agreements on Borrower's behalf on such terms and conditions as the Lenders deems appropriate; (iii) to renegotiate any agreements as the Lenders has a Security Interest in as the Lenders in its sole and exclusive discretion deems proper; (iv) to require, demand, collect, receive, settle, adjust, compromise and to give acquittances and receipts for the payment of any and all monies payable with respect to the Collateral and such agreements as the Lenders may enter into as provided in this paragraph; (v) to file any claims or proofs of claim, to commence, maintain or discontinue any actions, suits or other proceedings deemed by the Lenders advisable for the purpose of collecting or enforcing payment of any such monies; (vi) to endorse any checks, drafts or other orders or instruments for the payment of monies payable to Borrower which shall be issued in respect of such monies; (vii) to execute any and all such instruments, agreements or documents as may be necessary or desirable in the premises; and (viii) to apply any receipts so derived as provided herein.  However, the Lenders shall not be obligated to make any demand or present or file any claim or take any action authorized hereby.  If the Lenders requests, Borrower shall deliver to the Lenders all materials, books, records, documents and things of any nature required by the Lenders in the exercise of its rights hereunder.  Thereafter, unless the Lenders requests Borrower to do otherwise, Borrower shall continue to perform, and such other Persons shall continue to be obligated to perform, their respective obligations in accordance with any agreements entered into by it prior thereto and all other agreements thereafter entered into by the Lenders pursuant hereto.

10.    **MISCELLANEOUS.**

10.1.    Notices.  All notices, requests, demands or other communications to the parties hereto shall be in writing and shall be deemed to have been received by the party to which sent within one (1) Business Day after being sent by telecopy, or overnight courier or three (3) Business Days after being sent by mail, and shall be addressed to the Lenders or Borrower, as the case may be, at their respective addresses shown on the first page of this Agreement.  A courtesy copy of each notice sent by Borrower to the Lenders shall be sent to [TBC].

10.2.    No Waiver; Amendments in Writing.  Except as expressly provided herein to the contrary, no failure of, nor any delay on the part of, the Lenders or Borrower in exercising any right, power or privilege hereunder, or under any agreement, contract, indenture, document or instrument mentioned herein, shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power or privilege hereunder, or under any agreement, contract, indenture, document or instrument mentioned herein, preclude any other or further exercise thereof, or the exercise of any other right, power or privilege; nor shall any waiver of any right, power, privilege or default hereunder, or under any agreement, contract, indenture, document or instrument mentioned herein, constitute a waiver of any other right, power, privilege or default hereunder, or under any agreement, contract, indenture, document or instrument mentioned herein, constitute a waiver of any other right, power, privilege or default or constitute a waiver of any other default of the same or of any other term or provision.  All

MA-006875

rights and remedies provided herein are cumulative and not exclusive of any rights or remedies otherwise provided by law or at equity. No amendment to, or modification or waiver of, or consent with respect to, any provision of this Agreement or the Note shall be effective unless in writing and signed and delivered by the Lenders, and then any such amendment, modification, waiver or consent shall be effective only in the specific instance and for the specific purpose for which it is given.

       10.3.  <u>Release of Collateral</u>.  Upon Borrower's full performance of its obligations hereunder, the Lenders shall promptly release and reassign to Borrower (or its designee) all of its rights under any agreement secured by the Lenders' Security Interest, or any other Loan Documents, and any other agreements entered into by the Lenders on Borrower's behalf as provided in paragraph 9.4 hereof, and all other security interests which are granted to the Lenders pursuant hereto, or any other Loan Documents, and Borrower shall pay all expenses incident to the preparation, recordation and filing of any such releases or assignments. Notwithstanding the foregoing, Borrower's representations, warranties, agreements and indemnities hereunder shall survive repayment of the Indebtedness.

       10.4.  <u>Judicial Reference</u>.

       10.4.1. Other than (i) non-judicial foreclosure and all matters in connection therewith regarding the Lenders' Security Interest; or (ii) the appointment of a receiver, or the exercise of other provisional remedies (any and all of which may be initiated pursuant to applicable law), each controversy, dispute or claim between the parties arising out of or relating to this Agreement, which controversy, dispute or claim is not settled in writing within thirty (30) days after the "Claim Date" (defined as the date on which either the Lenders or Borrower give written notice to the other party that a controversy, dispute or claim exists), will be settled by a reference proceeding in California in accordance with the provisions of Sections 638 et seq. of the California Code of Civil Procedure ("CCP") (or any successor provisions thereto), which shall constitute the exclusive remedy for the resolution of any controversy, dispute or claim concerning this Agreement, including, without limitation, whether such controversy, dispute or claim is subject to the reference proceeding and, except as set forth above, the parties waive their rights to initiate any legal proceedings against each other in any court or jurisdiction other than the Superior Court in the California county where the Collateral is located or, if none of the Collateral is located in the State of California, in Los Angeles County (the "Court"). The referee shall be a retired California state court judge or an attorney licensed to practice law in the State of California with at least ten (10) years' experience practicing commercial law. If the parties are unable to agree upon a referee within ten (10) calendar days after one party serves a written notice of its intent to commence a judicial reference proceeding on the other party, then the referee will be selected by the court in accordance with CCP §640(b). The referee shall be appointed to sit as a temporary judge, with all of the powers of a temporary judge, as authorized by law, and upon selection should take and subscribe to the oath of office as provided for in Rule 244 of the California Rules of Court (or any subsequently enacted Rule). Each party shall have one peremptory challenge pursuant to CCP §170.6. The referee shall (A) be requested to set the matter for hearing within sixty (60) days after the date of selection of the referee and (B) try any and all issues of law or fact and report a statement of

decision upon them, if possible, within ninety (90) days after the Claim Date. Any party may apply for a reference proceeding at any time after thirty (30) days following notice to any other party of the nature of the controversy, dispute or claim, by filing a petition for a hearing or trial. All discovery shall be completed no later than fifteen (15) days before the first hearing date established by the referee. The referee may extend such period in the event of a party's refusal to provide requested discovery for any reason whatsoever, including, without limitation, legal objections raised to such discovery or unavailability of a witness due to absence or illness. Neither party shall be entitled to priority in conducting discovery. Depositions may be taken by either party upon seven (7) days written notice, and request for production or inspection of documents shall be responded to within ten (10) days after service. All disputes relating to discovery which cannot be resolved by the parties shall be submitted to the referee whose decision shall be final and binding upon the parties. Pending appointment of the referee as provided herein, the Court is empowered to issue temporary or provisional remedies, as appropriate.

10.4.2. Except as expressly set forth in this Agreement, the referee shall determine the manner in which the reference proceeding is conducted including the time and place of all hearings, the order of presentation of evidence, and all other questions that arise with respect to the course of the reference proceeding.

10.4.3. The referee shall render a written statement of decision and shall conduct the proceedings in accordance with the CCP, the California Rules of Court and the California Evidence Code, except as otherwise specifically agreed by the parties and approved by the referee. The referee's statement of decision shall set forth findings of fact and conclusions of law. The referee's decision shall be entered as a judgment in the court in accordance with the provisions of CCP §644 and 645, and shall be appealable in accordance with California law.

10.4.4. Nothing in this Agreement shall be deemed to apply to or limit the Lenders' right to (i) to exercise self-help remedies such as (but not limited to) setoff, (ii) foreclose judicially or nonjudicially against any real or personal property collateral, or to exercise judicial or nonjudicial power of sale rights, (iii) obtain from a court provisional or ancillary remedies (including, without limitation, injunctive relief, a writ of possession, prejudgment attachment, a protective order or the appointment of a receiver), or (iv) pursue its rights against any Person in a third-party proceeding in any action brought against the Lenders (including, without limitation, actions in bankruptcy court). The Lenders may exercise the rights set forth in this paragraph 10.4.4 before, during or after the pendency of any judicial reference proceeding. Neither the exercise of any self-help remedies nor the institution or maintenance of an action for foreclosure or provisional or ancillary remedies, or the opposition to any such provisional remedies, shall constitute a waiver of the right of any party, including, without limitation, the claimant in any such action, to require submission to judicial reference the merits of the dispute occasioning resort to such remedies. No provision in the Loan Documents regarding submission to jurisdiction or venue in any court is intended to or shall be construed to be in derogation of the foregoing general judicial reference.

Booty Patrol
Loan and Security Agreement                          22

MA-006877

10.4.5. Each of the parties hereto acknowledges that the foregoing general reference constitutes a full and complete waiver of the right to a trial by jury that the party may otherwise have and that this waiver and general reference is a material consideration to each party hereto.

10.4.6. If the enabling legislation which provides for appointment of a referee is repealed (and no successor statute is enacted), any dispute between the parties that would otherwise be determined by the reference procedure herein described will be resolved and determined by arbitration. The arbitration will be conducted by a retired judge of the Court, in accordance with the California Arbitration Act, §1280 through §1294.2 of the CCP as amended from time to time. The limitations with respect to discovery as set forth above shall apply to any such arbitration proceeding.

10.5.   Successors and Assigns.  The Lenders may assign any or all of its rights and obligations hereunder without Borrower's consent or notice to Borrower; provided, however, that, unless otherwise instructed by the Lenders in writing, Borrower shall continue to make all payments due hereunder directly to the Lenders.  Borrower may not assign any of its rights or obligations hereunder without the Lenders' prior written consent and any purported assignment shall be void and of no force or effect.  This Agreement shall be binding upon and inure to the benefit of Borrower and its permitted successors and assigns and the Lenders and its successors and assigns.

10.6.   Severability.  In the event any one or more of the provisions hereof is found to be invalid, illegal or unenforceable in any respect, such provision shall be curtailed and limited only to the extent necessary to bring it within legal requirements, and the validity, legality and enforceability of the remaining provisions of this Agreement shall not in any way be affected or impaired thereby.

10.7.   Governing Law.  This Agreement and the rights and obligations of the parties hereunder and under the documents executed concurrently herewith shall be construed in accordance with and be governed by the laws of the State of California without regard to conflicts of law rules.

10.8.   Entire Agreement; Counterparts.   This Agreement, the Note and the documents, instruments and agreements delivered (or to be delivered) pursuant hereto or pursuant to the Original Loan Agreement shall constitute the entire agreement between the parties hereto with respect to the Loan and shall supersede all other agreements written or oral with respect thereto.  In connection with the foregoing, the parties hereto acknowledge that this Agreement amends and restates the Original Loan Agreement.  This Agreement may be executed in one (1) or more counterparts, each of which shall be deemed an original and which together shall constitute one and the same instrument.  A signed and delivered facsimile copy of this Agreement,  or a signed copy transmitted electronically in either a tagged image format file (TIFF) or a portable document format (PDF), shall be binding on the party signing the facsimile or electronically transmitted copy, and such copy shall have the same effect as the original.  Any party who delivers such a signature page agrees to later deliver an original counterpart to any party which requests it.

Booty Patrol
Loan and Security Agreement                    23

MA-006878

10.9.   No Third Party Beneficiaries.  This Agreement is not made for the benefit of any third party or parties.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first written above.

"Borrower"

NEW MOON PICTURES LLC

By: _____

"Lender:

TCA GLOBAL CREDIT MARKET FUND, LP

By: _____

Address:

Bank Account:

VOODOO MOTION PICTURES DISTRIBUTION COMPANY LLC

By: _____

Address

Bank Account:

Booty Patrol
Loan and Security Agreement                    24

MA-006879