UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL NO: 14-22 |
| v. | * | SECTION: "F" |
| MICHAEL P. ARATA | * | |
| | * * * | |

DEFENDANT MICHAEL P. ARATA'S
MEMORANDUM REGARDING
FORFEITURE, DISCOVERY, AND SENTENCING ISSUES

**NOW INTO COURT**, through undersigned counsel, comes Michael Arata, who provides the following response to the Court's request for supplemental briefing regarding forfeiture, discovery, and sentencing issues.

**I.   The Court should vacate its previous forfeiture order and assess any forfeiture judgment against Mr. Hoffman alone.**

The Court entered its forfeiture judgment on May 2, 2016, ordering that Mr. Arata, Mr. Hoffman, and Mrs. Hoffman be held "jointly and severally" liable for $223,434.25 in forfeiture. Rec. Doc. 673, p. 37. However, more than a year later, on June 5, 2017, the Supreme Court issued *Honeycutt v. United States*, holding that a defendant may <u>not</u> be held "jointly and severally liable for property that his co-conspirator derived from the crime but that the defendant himself did not acquire." 137 S. Ct. at 1630.

As is explained further below, Mr. Hoffman derived the entire $223,434.25 in this case, Mr. Arata obtained nothing, and the Court's forfeiture order should be entered against Mr. Hoffman alone.

1

### A. Mr. Arata has not waived the applicability of *Honeycutt* to his case.

Although *Honeycutt* was mentioned in a footnote in the Fifth Circuit's opinion, *Honeycutt* has not previously been addressed in this case.

Mr. Arata filed his opening brief on November 15, 2016; the government filed its opposition brief on March 13, 2017; and Mr. Arata filed his reply on June 12, 2017.

The Supreme Court decided *Honeycutt* on June 5, 2017, long after the opening briefs were filed and just days before briefing was closed.

On November 30, 2017, just six days before the Fifth Circuit held oral argument, the government filed a Rule 28(j) letter stating (1) that *Honeycutt* was "issued in June 2017 near the close of briefing in this case"; (2) that the Fifth Circuit issued an opinion on November 30, 2017 extending *Honeycutt* to health care fraud forfeiture; and (3) that "at least one other circuit has remanded a wire fraud forfeiture entered under this statute for consideration under *Honeycutt*." Ex. "A." The government did not engage in any analysis as to the applicability of *Honeycutt* to the present case.

"Waiver" of a due process right requires proof of an "intentional relinquishment or abandonment of a known right or privilege." *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938). Such an "intentional relinquishment or abandonment" is not to be inferred from inaction. *Barker v. Wingo*, 407 U.S. 514, 525 (1972). Mr. Arata did not intentionally abandon his rights under *Honeycutt*. Indeed, he court not have reasonably known about *Honeycutt*, which was issued only one week before his reply brief was filed, and more than six months after his opening brief.

*Honeycutt* was raised in passing for the first time in a 28(j) letter filed at 5:05 p.m. on November 30, 2017, just six days before the oral argument at the Fifth Circuit. Until now, *Honeycutt* has not been briefed by either side.

### B.     The entire $223,434.25 in forfeiture should be allocated to Mr. Hoffman.

*Honeycutt* held that forfeiture "is limited to property the defendant himself actually acquired as the result of the crime." 137 S. Ct. at 1635. Although *Honeycutt* directly addressed the narcotics forfeiture statute, 21 U.S.C. § 853, there is no doubt that *Honeycutt's* rationale applies to 18 U.S.C. § 981(a)(1)(C), the forfeiture statute at issue here.

First, the Fifth Circuit has extended *Honeycutt* to health care fraud forfeiture under 18 U.S.C. § 982(a)(7). In *United States v. Sanjar*, 876 F.3d 725, 749 (5th Cir. 2017), the government conceded that "the same analysis [employed in *Honeycutt*] should apply to the statute authorizing forfeiture in health care fraud cases." The Fifth Circuit held that "the forfeiture statute for fraud offenses incorporates many of the drug law provisions on which *Honeycutt* relied in rejecting joint and several liability" and applied *Honeycutt* to health care fraud forfeiture. *Id*.

Second, in *United States v. Reed*, 908 F.3d 102, 127 (5th Cir. 2018), which involved 18 U.S.C. § 981(a)(1)(C), the government "conceded that the imposition of joint and several forfeiture liability should be vacated and remanded in light of *Honeycutt*." Although it did not address *Honeycutt's* applicability to § 981, the Fifth Circuit remanded the case for the district court to allocate the forfeiture between the two defendants.

And most recently, in its opposition to a petition for writ of certiorari in *Peithman v. United States*, the government "conced[ed] that that rationale of *Honeycutt* applies equally to sec. 981(a)(1)(C) as it does to sec. 853(a)(1)." *Peithman v. United States*, 140 S. Ct. 340 (2019) (Sotomayor, J., dissenting from denial of certiorari). *See also* Gov't Br. at 9, *Peithman v. United States*, No. 19-16 (August 2019) (stating that "the government has acknowledged in this Court

3

and in various lower courts that *Honeycutt's* reasoning rejecting joint and several liability also extends to forfeiture orders under Section 981(a)(1)(C)").

In the present case, the Court determined that

> the proper measure of the defendants' profit was $223,434.25 [$1,132,480.80 less $860,000 times .82]; the amount in tax credits issued by the State less the amount in tax credits legitimately earned by the project through December 31, 2008, discounted to market value to reflect the cash the defendants received from selling the tax credits to third parties.

Rec. Doc. 672, p. 19.

It is uncontroverted that Seven Arts Pictures Louisiana, LLC ("SAPLA") received the proceeds from the tax credit sale and that Peter Hoffman controlled SAPLA and received the use and benefit of those funds. *See* Affidavits of Mr. Hoffman, Mrs. Hoffman, and Mr. Arata, Rec. Doc. 793-2, 793-3, and 793-4. Mr. Arata did not receive those proceeds; and there has been no testimony at trial, at the forfeiture hearing, or at any other point in these proceedings controverting that fact.

Accordingly, under *Honeycutt*, the $223,434.25 in forfeiture should be entered against Mr. Hoffman alone.

**II.     Mr. Arata does not oppose deferring his request for discovery until after the January 8 sentencing.**

At the November 20, 2019 hearing, the Court noted that Mr. Arata's request to depose Agent Tom Boulton may be more appropriate in connection with Mr. Ararta's anticipated motion for a new trial. Mr. Arata has a good faith belief that he can and will establish sufficient legal and factual grounds to warrant a new trial and at the appropriate time will re-urge his request for discovery in connection with that motion.

Mr. Arata agrees that the Court has authority to permit discovery in connection with motions for new trial, where a petitioner has "specific allegations before the court show reason to

believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is entitled to relief." *Harris v. Nelson*, 394 U.S. 286, 299-300 (1969); s*ee also United States v. Velarde*, 485 F.3d 553, 560 (10th Cir. 2007); *see also United States v. Wolfson*, 413 F.2d 804, 808 (2d Cir. 1969).

Mr. Arata adopts Peter Hoffman's Application for Order to Show Cause and the arguments made therein.

### III. The Fifth Circuit did not determine Mr. Arata's intended loss amount. This Court's forfeiture order is the only established loss calculation.

The Court also asked the parties to brief whether the Fifth Circuit's decision controls the loss amount. The Fifth Circuit expressed no opinion on the reasonableness of Mr. Arata's initial sentence, did not calculate Mr. Arata's "intended loss," and did not order this Court to impose a particular sentence on remand. *See United States v. Hoffman*, 901 F.3d 523, 560 (5th Cir. 2018). The government nonetheless argues that the Fifth Circuit affirmed the loss amount contained in the initial PSR and that the mandate prevents Mr. Arata from challenging the loss amount calculation now. *See* Rec. Doc. 871 at 1–2. This simply isn't so, as the government's own argument proves. While arguing that the Fifth Circuit's mandate conclusively determined the loss amount and that the Court is therefore precluded from ruling on the issue, the government then argues the opposite and seeks to alter the loss amount by *adding* to the intended loss, conceding that the loss amount has *not* been conclusively established.[1] *See* Rec. Doc. 856 at 2–3.

As the Court is aware, the Court made no "intended loss" calculation at Mr. Arata's sentencing. The Court deferred the loss determination to a forfeiture hearing, at which the Court

---

[1] Also contrary to the government's argument that the Court adopted the PSR "as is," the Court sustained a number of Mr. Arata's objections at the January 27, 2016 sentencing.

5

found no actual loss and that the gain to defendants was $223,434.25. *See* Rec. Doc. 673 at 19.[2] The government did not appeal the forfeiture order, so this valuation of defendants' gains is now the law of the case.

The government's argument that this Court "adopted" the offense levels in the initial PSR—without any discussion or adjudication—fails to explain how that alleged "adoption" can be conformed with the later forfeiture order. Contrary to the government's argument, to the extent that the loss amount has *already* been determined,[3] for purposes of sentencing and the Fifth Circuit's mandate, the forfeiture amount (and not the PSR) controls. As argued in Mr. Arata's sentencing objections, gain to the defendant is one measure of loss, *see* U.S.S.G. § 2B1.1 app. n.3(B), and defendants' gain is the only calculation established in the record. The Fifth Circuit's mandate does not require a particular "intended loss" calculation, because this Court made no calculation for the Fifth Circuit to affirm. But to the extent the Court has made a loss calculation, the loss amount was determined to be the forfeiture amount of $223,434.25.

Mr. Arata adopts Susan Hoffman's Memorandum regarding forfeiture and the loss amount.

### IV. Mr. Arata should not be assessed a perjury enhancement.

Finally, the Court asked the parties to address whether Mr. Arata should be assessed a perjury enhancement under U.S.S.G. § 3C1.1. Mr. Arata did not commit perjury in his trial testimony, and no enhancement to the sentencing guidelines is warranted in this matter. "[N]ot every accused who testifies at trial and is convicted will incur an enhanced sentence under § 3C1.1." *United States v. Dunnigan*, 507 U.S. 87, 95 (1993). *Dunnigan* provides that even

---

[2] That amount represented the "tax credits issued by the State less the amount in tax credits legitimately earned by the project through December 31, 2008, discounted to market value to reflect the cash the defendants received from selling the tax credits to third-parties." *Id.*

[3] For his part, Arata argues that the Court never made an intended loss calculation and that the intended loss for purposes of Mr. Arata's resentencing should be set at zero. *See* Arata Sentencing Objections.

clearly false testimony may not reflect willful obstruction because "an accused may give inaccurate testimony due to confusion, mistake, or faulty memory." *Id*. As the Court recalls, Mr. Arata provided extensive and detailed testimony concerning the Louisiana film tax credit law, the custom and practices of the Louisiana film tax credit program and his good faith belief that his actions were in compliance with those practices. In order to impose an obstruction enhancement based on perjury, the sentencing court "must review the evidence and make independent findings necessary to establish a willful impediment to or obstruction of justice, or an attempt to do the same." *Id.* These findings include that (1) the defendant gave false testimony under oath (2) concerning a material matter (3) with the willful intent to deceive, rather than as a result of confusion or mistake. *Id*. at 93. In other words, the sentencing court must make a specific finding of perjury, evaluating the alleged untruthful testimony "in a light most favorable to the defendant.'" *United States v. Laury*, 985 F.2d 1293, 1308 (5th Cir. 1993).

If the Court requires such a hearing, Mr. Arata would provide the Court with evidence and witness testimony that was suppressed prior to trial by the State of Louisiana and the Louisiana Office of Inspector General concerning the practices of the Louisiana film tax credit program. This new evidence and witness testimony would establish conclusively that (a) Mr. Arata's trial testimony was truthful and (b) that the trial testimony provide to the jury by Mr. Stelly and Mr. Daigle was inaccurate and unreliable.[4]

The government made the same or similar allegations of perjury at Mr. Arata's initial sentencing that it repeats in its objections to the PSR. Each was rejected by the Court, and the Fifth Circuit stopped short of addressing the issue on appeal. Thus, the same factual bases for

---

[4] The government presents another two-sided argument here, refusing to engage the actual practices of the Louisiana film tax credit program, while at the same time arguing that Mr. Arata's trial testimony concerning that same Louisiana film tax credit program was false. The government cannot have it both ways. If it claims that Mr. Arata's testimony was false, than due process requires a full and honest accounting of the practices of the Louisiana film tax credit program in order to determine the veracity of Mr. Arata's trial testimony.

rejecting the government's arguments apply equally now, *e.g.* Mr. Arata essentially conceded the government's evidence at trial and testified in good faith about his compliance with the custom and practice in the industry. *See* Arata's initial sentencing memorandum recently resubmitted to the Court.

The government has sought to bolster its previously rejected argument for a perjury enhancement by contrasting Mr. Arata's testimony against statements made by the Fifth Circuit when upholding the jury's convictions. At no point, however, did the Fifth Circuit make any specific findings concerning the truth or veracity of any particular testimony by Mr. Arata. As such, there has never been any finding that Mr. Arata committed perjury, as required to support the enhancement. Viewing the evidence "in a light most favorable to the defendant," *Laury*, 985 F.2d at 1308, as the Court is required to do at sentencing, an obstruction enhancement based on perjury should not apply.

Respectfully submitted,

*/s/Ian Atkinson*
William P. Gibbens, 27225
Ian Atkinson, 31605
SCHONEKAS, EVANS, MCGOEY
& MCEACHIN, L.L.C.
909 Poydras Street, Suite 1600
New Orleans, Louisiana 70112
Telephone: (504) 680-6050
billy@semmlaw.com
ian@semmlaw.com

*Attorneys for Michael Arata*